IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARION P. HAMMER,

    Plaintiff,

v().                                              Case No. 4:25-cv-219-AW-MAF

NATIONAL RIFLE ASSOCIATION OF
AMERICA,

    Defendant.

_____/

## ORDER ON MOTION TO TRANSFER

    Plaintiff Marion Hammer sued the National Rifle Association alleging, among other claims, breach of contract. ECF No. 1 (Compl.). The NRA responded by moving to transfer the case to the Eastern District of Virginia based on a venue-selection provision. ECF No. 7. After carefully considering the parties' arguments and supplemental briefing, I conclude I should sever Hammer's contract claim under Rule 21, transfer that claim, and maintain the remainder of the case here in Hammer's chosen forum. But recognizing the parties' arguments about the efficiency of addressing all claims in one forum, I will wait seven days before doing so, during which time the parties may confer and indicate whether they agree to litigate all claims together—either here or in Virginia.

**I.**

    In 2017, the NRA retained Hammer as a consultant, and the two entered into a written agreement. ECF No. 1-1 (the Contract). Under the Contract, Hammer was

1

to "perform services in the form of advice, analysis and other duties reasonably assigned," including "providing information, advice and counsel on legislation . . . communication and media matters and other related services." ECF No. 1-1 at 1. In 2018, the parties extended the agreement through 2028. *See* ECF No. 1-1 at 5.

The Contract contains this forum-selection clause:

> Any legal action arising under or relating to this agreement or the breach hereof shall be brought only in a court situated in the City of Alexandria or the county of Fairfax, Commonwealth of Virginia, and the parties hereto hereby submit and consent to the exercise of personal jurisdiction over them by such courts for the purpose of any such action.

ECF No. 1-1 at 4.[1]

Hammer's complaint asserts six claims.[2] First, Hammer alleges the NRA breached the Contract by unilaterally terminating it. Compl. ¶¶ 39, 46-49, 67-69. The next four claims allege the NRA used Hammer's name, image, and likeness without her consent in fundraising and recruitment materials. *See* Compl. ¶¶ 52-56, 70-74 (asserting claim under Fla. Stat. § 540.08); 75-77 (common law invasion of privacy); 78-81 (unjust enrichment); 89-97 (Florida Deceptive and Unfair Trade Practices Act (FDUTPA)). (I will call these the "NIL" claims.) The last claim is for

---

[1] Hammer and the NRA submitted differing versions of the Contract. *See* ECF Nos. 1-1, 7-1. But as the NRA notes, any discrepancies are not important now because the forum-selection clause is identical in both. ECF No. 7 at 3-4.

[2] Although Hammer's complaint includes seven numbered counts, it includes no Count Four. For clarity, I will refer to the counts as they are numbered in the complaint.

conversion based on a donation Hammer intended for the Women's Leadership Forum but that wound up among the NRA's general funds. Compl. ¶¶ 57-66, 82-88.

The NRA moves to transfer pursuant to the forum-selection clause. *See* ECF No. 7. In opposing, Hammer argues the forum-selection clause is unenforceable, either because it violates public policy or because it will deprive her of her day in court. She also argues the forum-selection clause does not cover the non-contractual claims. Following a telephonic hearing, the parties filed supplemental briefs discussing public policy and severance. *See* ECF Nos. 14, 15.

## II.

The first issue is whether the forum-selection clause is valid and enforceable. As Hammer correctly notes, a forum-selection clause can be invalid if it would deprive the plaintiff of her day in court or if enforcement would violate public policy. *See Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). She argues that given her health and mobility issues, enforcing the forum-selection clause will deprive her of her day in court and would violate public policy. *See* ECF No. 9 at 7-11; ECF No. 14 at 3-9.

On the point of enforceability, some clarity is in order. The NRA suggests *Atlantic Marine* forecloses Hammer's day-in-court argument. *See* ECF No. 15 at 11-12 (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013)). That decision, the NRA argues, requires Hammer to show "extraordinary

circumstances unrelated to the convenience of the parties [that would] clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52, 62. But this puts the cart before the horse. Although *Atlantic Marine* says courts "should not consider arguments about the parties' private interests" when enforcing forum-selection clauses, it does so in the context of assessing private and public interests under 28 U.S.C. § 1404. *See Atl. Marine*, 571 U.S. at 64. Hammer's initial challenge concerns the threshold issue of the clause's validity—not private interest or public interest factors under § 1404. *See Atl. Marine*, 571 U.S. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."); *see, e.g.*, *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018) ("Nothing in *Atlantic Marine* disturbs the long-standing body of law clarifying that a court need not transfer an action based on a forum-selection clause if the clause is invalid (*i.e.*, an enforceability challenge) . . . .").

So I begin with Hammer's day-in-court argument. Hammer is 86 years old and permanently disabled. *See* ECF No. 9 at 13-14 (Hammer's declaration). She has not left her home in months. *Id.* Because travel to Virginia would be "an insurmountable task," she argues, transfer would deprive her of her day in court. *Id.* at 10.

Hammer presents a sympathetic situation, but she has not made the "strong showing" required to render the forum-selection clause unenforceable. *Krenkel*, 579 F.3d at 1281. Modern litigation obviates the need for much, if not all travel, and

4

Hammer has not established that she would need to travel to court (here or in Virginia) to pursue her case. *See Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1346 (11th Cir. 2021) ("A plaintiff may have his 'day in court' without ever setting foot in a courtroom." (quoting in parenthetical *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995))). That is especially true in federal court, where many matters are decided without hearings and where teleconferencing technology further limits the need for travel. *See, e.g.*, *Pratt v. Silversea Cruises, Ltd., Inc.*, 2005 WL 1656891, at *4 (N.D. Cal. July 13, 2005) (concluding these factors will permit a physically disabled plaintiff to have her day in court); *Ozaroski v. D.O.L. Moving & Storage, Inc.*, 2020 WL 13568724, at *5 (N.D. Ga. Apr. 16, 2020) (similar). Hammer's claim that she will need to be present is conclusory. Here, for example, there has been one hearing, and it was telephonic. There is no current indication that another hearing or a trial will be necessary. Even then, the Rules also "permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Considering the modern realities of civil litigation and the tools readily available to minimize the inconvenience of distance, I cannot conclude that litigation in Virginia would deprive Hammer of her day in court.

Hammer next argues the forum-selection clause's enforcement would contravene Florida's public policy. ECF No. 14 at 1. She lists three public policies at issue: (1) Florida's public policy of having Florida courts decide FDUPTA claims;

(2) Florida's public policy of having Florida courts decide § 540.08 claims; and (3) Florida's public policy of judicial efficiency. *See* ECF No. 14.

As I explain below, severance is appropriate, so there is no need to address Hammer's arguments as to the first two asserted policies. But I will address Hammer's argument that severing claims and enforcing the forum-selection clause would violate Florida's public policy of judicial efficiency. *See* ECF No. 14 at 7-9.

Although styled as a public-policy argument, Hammer's argument is better characterized as an unreasonableness argument. The argument's thrust is that enforcing the forum-selection clause would mean parallel proceedings on the same facts and legal theories, resulting in waste. *See Woods v. Christensen Shipyards, Ltd.*, 2005 WL 5654643, at *11 (S.D. Fla. Sept. 23, 2005) (noting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) permits courts to not enforce forum-selection clauses when enforcement would be "unreasonable and unjust," and declining to enforce forum-selection clause because parallel proceedings "on the same set of facts and legal issues" would be unreasonable); *see also* ECF No. 14 at 7-9.

The distinction between a "public policy" argument and an "unreasonableness" argument matters: There is no freestanding "unreasonableness" or "unfairness" objection to a forum-selection clause. Unless Hammer can show (1) fraud or overreaching, (2) that she would be deprived her day in court, (3) that the chosen law would deprive her of a remedy, or (4) that enforcement of the clause

would contravene public policy, I must "enforce the forum-selection clause according to its terms." *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1294 (11th Cir. 2022). In other words, to show the forum-selection clause is unreasonable or unjust, Hammer had to show its enforcement falls in one of the four enumerated circumstances above. *See id.* ("Absent one of those circumstances," courts "should enforce the forum-selection clause").

Judicial economy and efficiency are no doubt important. But Hammer points to no caselaw or statute considering them the kind of "strong public polic[ies]" that would prevent enforcement here, so she has not made the "strong showing" necessary. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (noting that "a strong public policy" will generally be "declared by statute or by judicial decision"). In any event, on these facts, I cannot say judicial efficiency trumps the important public policy of holding parties to their bargain. *See AFC Franchising, LLC*, 43 F.4th at 1295 (enforcing forum selection clauses furthers "a fundamental policy of contract law—that parties are generally free to structure their affairs through legally binding promises").

In sum, Hammer has not shown the forum-selection clause to be invalid or unenforceable.

## III.

The next question is which claims fall within the clause's scope. Conducting a claim-by-claim analysis, I conclude only the contract claim does. I then consider whether the § 1404 public-interest factors heavily disfavor transfer of that claim, and I conclude they do not.

### A.

The parties agree as to two of Hammer's claims. First, the NRA argues (and Hammer concedes) that Count I "asserts a straightforward breach of contract, which falls squarely within the clause." ECF No. 7 at 13; *see also* ECF No. 14 at 3 (acknowledging Count I's "relationship to the contract"). Similarly, the parties agree that the conversion claim is *not* covered. *See* ECF No. 15 at 9 (NRA's conceding conversion claim "does not fall squarely within the [clause's] scope, as it alleges wrongful appropriation of Plaintiff's donations, which are alleged actions independent of the Agreement"); ECF No. 9 at 4-5.

The dispute is whether Hammer's NIL claims "arise under" or "relate to" the Contract. The NRA argues these claims "necessarily depend" on whether its use of Hammer's name, image, and likeness was unauthorized following the Contract's termination. *See* ECF No. 15 at 8. The NRA points out that forum-selection clauses generally apply to claims with significant relationships to the underlying contracts. *See, e.g.*, *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987)

8

(construing forum-selection clause to include claims "arising directly or indirectly from the business relationship evidenced by the contract"). Hammer, on the other hand, contends the NIL claims do not result from the performance of contractual duties and thus are not covered. ECF No. 9 at 5-6 (citing *Bailey v. ERG Enter., LP*, 705 F.3d 1311, 1317 (11th Cir. 2013)). She reasons that the unauthorized NIL use occurred after the Contract's termination and that the Contract never authorized NIL use anyway. ECF No. 9 at 5-6.

I agree with Hammer. First, recall that the forum-selection clause governs "[a]ny legal action arising under or relating to this agreement or the breach hereof." ECF No. 1-1 at 4. "A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'" *Bailey*, 705 F.3d at 1317-18 (11th Cir. 2013). "Relate to" requires some direct relationship with the contract. *See id.* at 1318 ("[I]f relate to were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere." (quoting *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218-19 (11th Cir. 2011) (cleaned up))). And a claim does not necessarily relate to an agreement even if it could not have arisen "but for" the agreement. *Id.*[3]

---

[3] The parties treat "relate to" and "arising under" as synonymous. To the extent there is any difference, I do not read "arising under" as broader than "relating to." *See, e.g.*, *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("[T]he dispute can fairly be said to arise out of or relate to the

The NIL claims do not arise from obligations or duties under the Contract. Hammer was to "perform services in the form of advice" and "analysis." ECF No. 1-1 at 1. Her "other duties" must be read in that context. *See* ECF No. 1-1 at 1 ("[O]ther duties reasonably assigned [by the NRA] includ[e] providing information, advice and counsel . . . ."). But providing advice and analysis draws on Hammer's expertise and judgment, not her name, image, and likeness. The parties' intent is underscored, too, by the Contract's "conflicts" provision, which bars Hammer from "consulting on business, policy, legislative and political issues with other clients" absent the NRA's approval. ECF No. 1-1 at 2. The focus of the Contract is Hammer's expertise and judgment, not her name, image, or likeness.

The NRA assumes too much when it argues Hammer's NIL claims "necessarily depend" on the Contract and what it allows. Nothing in the Contract suggests the parties contemplated use of Hammer's name, image, or likeness. Because the Contract is limited to Hammer's expertise and judgment, Hammer's NIL claims could exist even if the Contract never existed. Indeed, Hammer alleges the NIL wrongdoing occurred after the Contract's termination. *See* Compl. ¶¶ 52-56. That is enough to place it outside the clause's scope. *See Princess Cruise Lines*, 657 F.3d at 1219 (explaining that plaintiff's claims were not an "immediate,

---

contract" where it occurs "as a fairly direct result of the performance of contractual duties").

foreseeable result of" contractual performance because defendant "could have engaged in [the] tortious conduct even in the absence of any contractual or employment relationship with [plaintiff]").

Nor do Hammer's NIL claims arise from the relationship evidenced by the Contract. While the NRA correctly explains that forum-selection clauses can be enforced against claims arising "directly or indirectly" from the parties' business relationship, the business relationship still must be assessed by reference to the contract. *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1331 (11th Cir. 2011). So, for example, an employment discrimination claim arises out of an employment contract, because the contract evidences the employee-employer relationship. *See id.* at 1330-31. Similarly, a consumer's federal Truth-in-Lending Act claim arises from his loan agreement, without which the claim would not exist. *See Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 561 (11th Cir. 2016).

Recall that the Contract is for consulting services. The NRA's alleged use of Hammer's name, image, and likeness, however, stem from her notoriety as a decades-long lobbyist and advocate for the organization, not from her relationship as an NRA consultant. *See* Compl. ¶¶ 53-55 (alleged improper uses reference Hammer's "44 Years of Second Amendment Advocacy," "groundbreaking role as the first female president of the NRA," and her "extensive lobbying work in Florida influencing gun legislation"). Hammer's notoriety existed before the Contract and

11

exists outside of it. The bottom line is that Hammer's NIL claims arise from neither her contractual duties nor her role as an NRA consultant. Hammer's breach-of-contract claim is the only claim the forum-selection clause covers.

## B.

Because the contract claim is covered, I must transfer it unless public-interest factors weigh against transfer. *Atlantic Marine* is instructive here. As it recognized, § 1404 transfer generally involves considerations of private interest factors and public interest factors. But with an enforceable forum-selection clause (as we have here), I must deem the private-interest factors to "weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. I may consider public-interest factors, but Hammer must show those factors "overwhelmingly disfavor" transfer. *Id.* at 67. She has not done so.

"Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6. Hammer points to none of these factors, instead focusing on enforceability. ECF Nos. 9, 14. Regardless, public-interest factors do not weigh against transfer here. *See Atl. Marine*, 571 U.S. at 64 (public-interest factors will rarely defeat a motion to transfer). By holding parties to their bargain, enforcing forum-selection clauses "furthers vital interests of the justice

system," and so such clauses should "be given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 63 (cleaned up). While Hammer points to concerns of judicial efficiency—arguing enforcement would result in "needless waste in parallel proceedings" (ECF No. 14 at 8)—those concerns do not overwhelmingly disfavor transfer. If judicial efficiency alone were the deciding factor, parties could evade their contractual obligations through artful pleading. *Cf. St. Francis Holdings, LLC v. Cynosure, Inc.*, 2020 WL 9601509, at *5 (M.D. Fla. Sept. 23, 2020) ("Allowing judicial efficiency to rule the day would effectively neutralize *Atlantic Marine* and allow clever parties to plead around valid forum-selection clauses by adding multiple defendants."). Judicial efficiency does not "overwhelmingly disfavor" holding Hammer to her bargain.

## IV.

The next question is what to do with the remaining claims. In the absence of a valid forum-selection clause, Hammer's choice of forum is entitled to deference. *See Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009) (plaintiff's chosen forum should "rarely be disturbed"). The trouble here is that § 1404 contemplates transfer of an entire civil action, not of discrete claims. *See* 28 U.S.C. § 1404(a) (permitting a district court to transfer "any civil action"); *Tillman v. Advanced Pub. Safety, Inc.*, 2015 WL 13754340, at *9 (S.D. Iowa Dec. 30, 2015)

(collecting cases and noting that federal courts have interpreted § 1404 "to permit the transfer of an entire action, rather than individual claims").

But transferring Hammer's remaining claims would be unwarranted. It would deprive Hammer of her chosen forum for claims not subject to the agreement. And it would hand the NRA an unbargained-for benefit (at Hammer's expense). I conclude Hammer's contract claim should be severed and transferred and that the remaining claims should stay here.

The NRA argues this outcome would lead to inefficiency and duplication.[4] It reasons that Hammer's claims comprise a common nucleus of operative fact and should stay together to conserve resources and avoid inconsistent rulings. *See* ECF No. 15 at 9-11.[5]

---

[4] Hammer argues I should keep her breach of contract claim—and by extension, the entire action—here for similar reasons. As explained above, I reject that argument.

[5] The NRA's reliance on *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014), is misplaced. While the court affirmed dismissal based on a forum-selection clause, it made no mention of "inconvenience" or "split proceedings." *See* ECF No. 15 at 10 (misquoting *Pappas*, 585 F. App'x at 967). Instead, the court focused on whether the forum-selection clause was "reasonably communicated" to the plaintiff, *id.* at 965, and whether public-interest factors counseled against enforcement (with a focus on Bahama's interest in the case), *id.* at 967. The NRA's contention that *Atlantic Marine* supports transfer of the entire action is similarly misplaced. ECF No. 15 at 10. *Atlantic Marine* says nothing of the interaction between "principal claims" covered by a forum-selection clause and "related claims" not covered. Rather, the NRA's pincite to *Atlantic Marine* discusses how to treat the parties' private interests and choice-of-law rules under § 1404. *See Atlantic Marine*, 571 U.S. at 64-65.

It is likely that keeping all claims together would produce greater efficiency. But severance will not create purely duplicative litigation. The core legal questions are distinct. Whether the NRA breached the Contract is separate from whether it converted Hammer's funds in connection with a personal donation. The NRA might have breached the Contract without converting funds—or converted funds without breaching the Contract. Similarly, Hammer asserts that her NIL claims arose only after the NRA terminated the Contract. It would not be inconsistent for one court to find that the NRA breached the Contract, while another court finds the NRA never misused Hammer's name, image, or likeness. The NRA's claim of inconsistent judgments is, at this stage, largely speculative.

To the extent there is a risk of duplicative litigation efforts, the parties can reduce that risk by cross designating depositions, issuing common discovery requests, and using other procedural mechanisms. *See, e.g., Geico Marine Ins. Co. v. Amzim Marine Servs., LLC*, 641 F. Supp. 3d 1292, 1304 (M.D. Fla. 2022) (quoting *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 409-10 (3d Cir. 2017) (discussing framework when a forum-selection clause binds some, but not all, defendants)).

There may be some overlap in the issues, and I cannot say with certainty that inconsistent judgments could not result. But inconsistent judgments seem unlikely, and standing alone, their possibility is not dispositive. Considering the totality of the circumstances and the competing concerns of fairness to Hammer's claims and the

parties' agreement, the circumstances here tip in favor of severance. *See Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) ("The trial court has broad discretion to sever issues to be tried before it." (citing Fed. R. Civ. P. 21)); *Cf. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 486-88 (S.D.N.Y. 2007), *aff'd sub nom. N. Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) (declining to transfer case under § 1404 despite a "risk of inconsistent interpretations of the policy" at issue because "competing concerns about timing tip the interests of justice analysis in favor of maintaining venue here").

## V.

The forum-selection clause is the NRA's to enforce or waive. Because of the parties' expressed efficiency concerns, I will hold off on directing the severance and transfer. Within seven days, the parties must file a joint notice indicating whether the NRA intends to enforce or waive the forum-selection clause. If the NRA intends to enforce, Hammer must indicate whether she consents to transfer of the entire action or she wishes to maintain her non-contract claims here. If the NRA decides to enforce its clause, and Hammer does not consent to transfer the entire action, the court will issue an order consistent with the reasoning outlined above, and two lawsuits will proceed.

SO ORDERED on September 5, 2025.

>s/ *Allen Winsor*
>Chief United States District Judge