## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**MARION P. HAMMER,**

     **Plaintiff,**

**v.**                                **Case No. 4:25-cv-219-AW-MAF**

**NATIONAL RIFLE ASSOCIATION OF AMERICA,**

     **Defendant.**

_____/

### <u>ORDER GRANTING IN PART MOTION TO DISMISS</u>

Plaintiff Marion Hammer sued the National Rifle Association, alleging breach of contract and other claims. ECF No. 1 (Compl.). This court severed and transferred the contract claim. ECF No. 18. Hammer's remaining claims—which generally allege the NRA misused her name, image, and likeness (NIL) and converted funds Hammer intended for the NRA Foundation—remained here. *Id.*

The NRA moved to dismiss those claims. ECF No. 22. It contends the complaint is a shotgun pleading, and it contends Hammer fails to state any claim. Having considered the motion and Hammer's response (ECF No. 26), I now grant the motion in part. I will not dismiss the complaint as a shotgun pleading. But because Hammer has not plausibly alleged unjust enrichment, I will dismiss that claim under Rule 12(b)(6). The other claims survive, however, because Hammer

plausibly alleged the NRA misappropriated her NIL for a commercial purpose and that the NRA converted funds she intended for a different entity.

## I.

I begin with the NRA's contention that Hammer's complaint is subject to dismissal as a shotgun pleading. Such pleadings are usually characterized by sloppy and successive claim incorporation, conclusory and impertinent factual allegations, or impermissible group pleading. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320-23 (11th Cir. 2015). The problem with shotgun pleadings is that they fail to give defendants "adequate notice of the claims against them" and the grounds upon which each claim rests. *Id.* at 1323.

To be sure, Hammer's complaint features some characteristics of a shotgun pleading. For example, it incorporates facts concerning the contract claim into the NIL claims (Counts Two and Three) and conversion claim. Still, Hammer's complaint provides adequate notice regarding the nature of the claims and the grounds upon which they rest. As it clarifies within each Count, the alleged NIL misappropriation rests on the NRA's use of Hammer's NIL for "advertising or commercial purposes" or "recruitment efforts and membership interests." Compl. ¶¶ 72, 76, 79, 91. The complaint expressly alleges each instance of misuse. *Id.* ¶¶ 52-56. As to the conversion claim, the complaint sets out the specific checks at issue

and the essential facts concerning the alleged conversion, even if she incorporates impertinent allegations concerning other claims. *Id*. ¶¶ 82-88.

Although not a model pleading, Hammer's complaint provides adequate notice. The NRA has not shown that it is uncertain about the claims or how to respond. As a matter of discretion, I decline to dismiss the complaint as a shotgun pleading.

## II.

The NRA next argues that each remaining claim is subject to dismissal for failure to state a claim. To avoid a Rule 12(b)(6) dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion-to-dismiss stage, a complaint's well-pleaded factual allegations are accepted as true, but conclusory ones are not. *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

I will address each claim in turn.

## A.

Hammer presents a statutory NIL claim and a common-law invasion-of-privacy claim (Counts II and III). Section 540.08 provides a cause of action for those whose image or likeness is used without consent for trade, commercial, or advertising purposes. Fla. Stat. § 540.08. There is also a common-law right against misappropriation. *Almeida v. Amazon.com*, 456 F.3d 1316, 1320 n.1 (11th Cir.

2006). The statute codifies the common-law right but does not supplant it. *Id.*; *see also* Fla. Stat. § 540.08(7) (noting "[t]he remedies provided for in this section shall be in addition to and not in limitation of the remedies" under the common law). The Eleventh Circuit has called the two claims "substantially identical," *Almeida*, 456 F.3d at 1320 n.1, and both parties here treat them as substantially the same and subject to the same defenses. ECF No. 22 at 10; ECF No. 26 at 7-8. Because the parties treat the claims as rising or falling together, I will too.

In arguing neither claim can succeed, the NRA contends Hammer alleged nothing beyond non-commercial conduct—what it calls "archival journalism" or "legacy recognition." Hammer has not, in the NRA's view, alleged any *commercial* misappropriation. (The parties seem to agree that Hammer can succeed on either claim only if there is "commercial" misappropriation.) And even if there were commercial use, the NRA argues, the use of Hammer's image fell within a newsworthiness exception under statute and the common law.

The NRA first argues that its webpages are expressive and lack commercial purpose. It relies heavily on *Tyne v. Time Warner Entertainment Company*, which involved a movie about a dramatic shipwreck and the story of its survivors. 901 So. 2d 802, 803-04 (Fla. 2005). The shipwreck survivors sued under § 540.08, claiming the movie amounted to commercial misappropriation of their NIL. *Id.* at 804-05. The Florida Supreme Court disagreed. *Id.* at 809-10. First, it determined that using a

person's name or image in expressive works—like movies, books, or songs—does not constitute a "commercial purpose" in the usual sense because those works do not ordinarily promote products or services. *Id.* at 807-08, 810; *see also id.* at 807-08 (quoting the Restatement (Third) of Unfair Competition's definition of "purposes of trade").[1] Second, the court concluded that interpreting the statute to reach expressive work would raise constitutional concern: commercial speech, which "is best understood as speech that merely advertises a product or service for business purposes," receives reduced First Amendment protection. *Id.* at 809. Expressive speech, on the other hand, enjoys full First Amendment protection (even when sold for profit). *Id.* at 808-09 (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952)). Construing the statute to avoid constitutional problems, the Florida Supreme Court concluded a publication has no "commercial purpose" unless it "directly promote[s] a product or service." *Id.* at 810.

Hammer alleges three acts of misappropriation: First, an article commemorating Hammer's retirement on a webpage featuring a "DONATE" button. Compl. ¶ 53. Second, a webpage for the Marion P. Hammer Woman of Distinction

---

[1] To be sure, books, movies, and songs are created and sold for profit. But that does not strip such works of their expressive nature. *See Tyne*, 901 So. 2d at 806-07. And advertisements for those books or movies fall outside § 540.08 as "incidental" to expressive work. *Id.* at 807; *see also Almeida*, 456 F.3d at 1326 ("Amazon's use of book cover images is not an endorsement or promotion of any product or service, but is merely incidental to, and customary for, the business of internet book sales.").

Award, which honors Hammer's legacy. *Id.* ¶ 54. And third, another webpage promoting and soliciting nominations for the Marion P. Hammer Award. *Id.* ¶ 55. The NRA argues these three uses of Hammer's NIL were "archival journalism" or "legacy recognition," and not "sales promotion" because they did not promote specific products. ECF No. 22 at 6. Hammer, on the other hand, says these webpages are actionable because they solicited donations or promoted membership and associated her NIL with the NRA. ECF No. 26 at 5-7.

Hammer has alleged enough to show that the Marion P. Hammer Award webpages reflect classic commercial misappropriation. *Tyne* frames the essential question not as whether someone's image is used (that alone is not enough), but whether that use is designed "to directly promote the product or service of the publisher," such that it associates that person's likeness "with something else." *Tyne*, 901 So. 2d at 806 (quoting and approving *Loft v. Fuller*, 408 So. 2d 619, 622-23 (Fla. 4th DCA 1981)). And Hammer has alleged facts suggesting the award webpages do just that by promoting and encouraging female membership in the NRA through the "Marion P. Hammer Woman of Distinction Award." *Cf., e.g.*, *John Daly Enters., LLC v. Hippo Golf, Inc.*, 646 F. Supp. 2d 1347, 1351 (S.D. Fla. 2009) (noting business did not "simply include[]" professional golfer on its website, but instead promoted golfer as "synonymous" with its brand). That award and the associated webpages showcase Hammer's achievements, laude the award's

recipients, and encourage visitors to nominate "other women, who are currently NRA members, for the award." Compl. ¶¶ 2, 54-56. That use suggests an effort to "attract attention" to and promote the NRA, not an effort merely to create an expressive narrative. *Tyne*, 901 So. 2d at 806-07; *cf. also Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1213 (M.D. Fla. 2002) (noting video at issue was "an expressive work created solely for entertainment purposes").[2]

The Restatement on which *Tyne* relied contemplates this sort of scenario: "Unauthorized use of a person's identity in solicitations for contributions or memberships by nonprofit entities such as charitable, educational, governmental, fraternal, and religious organizations also constitutes a use for purposes of trade." Restatement (Third) Unfair Competition § 47 cmt. a (1995); *see also Tyne*, 901 So. 2d at 807 (citing the Restatement and comment c.).

Next, the NRA says even if otherwise actionable, its webpages fall within the statute's newsworthiness exception. *See* Fla. Stat. § 540.08(4)(a). To qualify under that exception, the use must (1) be part of a bona fide news report or presentation (2) concern a current and legitimate public interest, and (3) not be used for advertising

---

[2] The retirement article presents a closer call. *Cf. Tyne*, 901 So. 2d at 806 (noting "use 'for the purposes of trade' does not ordinarily include the use of a person's identity in news reporting" unless that person's identity "is used solely to attract attention to" content unrelated "to the identified person") (citation omitted). Hammer will ultimately have to prove up her claims, but she has alleged enough within Counts II and III to suggest commercial misappropriation.

purposes. *Id.*; *see also Cape Publ'ns, Inc. v. Bridges*, 423 So. 2d 426, 427 (Fla. 5th DCA 1982) (noting that the common-law "right of privacy does not necessarily protect a person against the publication of his name or photograph in connection with the dissemination of legitimate news items or other matters of public interest").

The NRA points generally to the "public interest in ongoing gun rights discussions" and Hammer's status as a public figure. But Hammer alleges facts showing the webpages principally serve to promote the Marion P. Hammer Award and NRA membership. The websites solicit member-nominations for the Award and commemorate its member-recipients. It is thus not clear (at least at this stage) that these were bona fide news reports or presentations on issues of "current and legitimate public interest." *Cf. Ewing v. A-1 Mgmt.*, 481 So. 2d 99, 99 (Fla. 3d DCA 1986) (affirming grant of summary judgment because bail bondsman's publication of plaintiffs' image served to identify and secure criminal fugitive and thus fell within exception); *Valentine v. CBS, Inc.*, 698 F.2d 430, 432-33 (11th Cir. 1983) (affirming grant of summary judgment because the work (Bob Dylan's song *Hurricane*), referenced plaintiff's "role as a witness to a murder, clearly an event of legitimate public interest").

Perhaps at some level, anything the NRA does touches on gun rights. But that does not mean anything it publishes constitutes matters of public interest subject to

the exceptions asserted. The NRA is not entitled to dismissal of Counts Two or Three.

## B.

The next claim is Count Five. (The complaint has no Count Four.) Count Five is for unjust enrichment and rests on the same facts as the NIL claims. Compl. ¶¶ 78-81. To state an unjust-enrichment claim, Hammer must allege she conferred a benefit on the NRA, that the NRA accepted and retained that benefit, and that it would be inequitable for the NRA to keep the benefit without paying for its value. *Chiquita Fresh N. Am., LLC v. Port Everglades Terminal, LLC*, 372 So. 3d 277, 280-81 (Fla. 4th DCA 2023).

This claim fails because Hammer has not alleged any benefit conferred. She asserts simply that the NRA "continues to utilize" her NIL. She acknowledges the NRA has used it since 2005, and she alleges nothing about the circumstances or terms giving rise to the NRA's initial use of it. Compl. ¶¶ 2, 52, 79. She also challenges only post-contract-termination uses of her NIL. Compl. ¶ 52. That suggests the benefit is maybe not just her NIL, but the unauthorized use of it. Either way, she does not clarify the benefit or the circumstances surrounding the NRA's acceptance of it. The NRA is entitled to dismissal of Count V.

## C.

Next is Hammer's conversion claim. To succeed, Hammer had to allege the NRA wrongfully deprived her of her property permanently or for an indefinite time. *Mayo v. Allen*, 973 So. 2d 1257, 1258-59 (Fla. 1st DCA 2008). The NRA principally argues Hammer did not allege identifiable funds and that she had no possessory rights in an unrestricted donation.

Both the NRA's arguments fail. First, Hammer identifies the check at issue by its number and amount. That is sufficiently identifiable to be actionable. *See Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) ("Money is capable of identification where it is delivered at one time, by one act and in one mass . . . ."). Second, Hammer's check was a donation to the NRA Foundation, Inc., not to whoever took it (allegedly, the NRA). That Hammer entrusted the NRA to deliver the donation did not dispossess her of her property interest in it, particularly if she earmarked it for a particular purpose (as she alleges). *See, e.g.*, *Bergen Brunswig Corp. v. State Dep't of Health & Hum. Servs.*, 415 So. 2d 765, 767 (Fla. 1st DCA 1982) ("The wrongful use of [earmarked] funds, contrary to [plaintiff's] express instruction, constitutes conversion."); *Eagle v. Benefield-Chappel, Inc.*, 476 So. 2d 716, 718 (Fla. 4th DCA 1985).

The NRA's separate argument that demand is a prerequisite is also unfounded. Conversion depends on a defendant's wrongful deprivation. A defendant's wrongful

intent "may be, but is not always, shown by demand and refusal." *Senfeld v. Bank of N. S. Tr. Co.*, 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984). Here, Hammer alleges the NRA specifically solicited checks for the NRA Foundation, Inc., accepted those checks as an intermediary, deposited at least one into its own account, and has refused to provide information regarding another. Compl. ¶¶ 62-64. And even if demand were required here, Hammer plausibly alleges futility: She alleges efforts to inquire about one of the checks she handed to the NRA and the NRA's subsequent refusal to provide additional information regarding it. *Id.* ¶ 64. That is enough at this stage.

### D.

Last is Hammer's claim under Florida's Deceptive and Unfair Trade Practices Act. *See* Fla. Stat. § 501.201 *et seq.* That statute makes unlawful unfair or deceptive acts in trade or commerce. Fla. Stat. § 501.204; *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (defining unfair and deceptive). To recover, Hammer must allege an unfair or deceptive act or practice that caused her harm. The facts of Hammer's NIL claims and her conversion claim underpin this Count. Compl. ¶¶ 89-97 (Count Seven).

First are the facts concerning the NRA's use of Hammer's NIL. The NRA argues Hammer lacks consumer standing. But it points to no language either in the statute or in caselaw requiring such standing. Rather, the statute permits "anyone

aggrieved by" violation of the statute to obtain declaratory or injunctive relief, or any "person who has suffered a loss" to seek actual damages. Fla. Stat. § 501.211(1)-(2). And of note, the Florida Legislature in 2001 replaced the word "consumer" in the damages provision with "person," permitting consumers and non-consumers alike to recover actual damages. *See Gritzke v. M.R.A. Holding, LLC*, 2002 WL 32107540, at *3-4 (N.D. Fla. Mar. 15, 2002); *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) (noting the amendment and holding that "section 501.211(2) evinces a legislative directive that the remedy of damages is not limited to a consumer"); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) ("[T]he legislative change regarding the claimant able to recover under FDUTPA from a 'consumer' to a 'person' must be afforded significant meaning."). So long as Hammer can show she suffered a loss stemming from violation of the statute, she has a claim.

Hammer says her "future business opportunities for endorsement have diminished in value" following the NRA's continued use of her NIL. Compl. ¶ 92. And as the NRA correctly notes, the statute permits recovery only for "actual damages." *See* Fla. Stat. § 501.211(2). But citing pre-2001 caselaw, the NRA says the measure of damages under FDUTPA is "the difference in market value between what was received and what should have been received." ECF No. 22 at 19-20 (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).

Hammer does not contend she is a consumer or that she bought anything at all. ECF No. 26 at 14. And outside the consumer-plaintiff context, the measure of "actual damages" under FDUTPA is less clear. *Cf. Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1284 (S.D. Fla. 2021) (noting "decisions evaluating the damages available to a competitor company under the FDUTPA vary widely"). Here, Hammer's alleged damages sound in future lost profits. Compl. ¶ 92 ("Plaintiff's future business opportunities for endorsement have diminished in value."). And while there is strong reason to believe a non-consumer's past lost profits are actionable under FDUTPA, *Tymar Distrib. LLC*, 558 F. Supp. 3d at 1284-85, there is less reason to think future lost profits are. *See, e.g., Digiport, Inc. v. Foram Dev. BFC, LLC*, 314 So. 3d 550, 554 (Fla. 3d DCA 2020) (affirming trial court's exclusion of future lost profits in non-consumer FDUTPA action). Plus, even if lost profits were cognizable, Hammer's claim for damages is conclusory. Hammer points vaguely to diminished future endorsement opportunities, Compl. ¶ 92, but identifies no endorsement opportunities before or after her time with the NRA. Hammer has thus not alleged cognizable damages under FDUTPA. *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004) (noting plaintiff "failed to state a cause of action" under FDUTPA where she "did not allege a recoverable loss under the statute").

Second are the facts concerning the converted check. The NRA says its solicitation of Hammer's check "was personal and targeted," "not a broad consumer practice—precisely the type of non-consumer dispute to which FDUTPA does not apply." ECF No. 22 at 19. But there is no requirement that a defendant's practice apply broadly. "Personal and targeted" acts of deception are actionable too. "[T]he FDUTPA applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract." *PNR, Inc.*, 842 So. 2d at 777. Moreover, the NRA's argument that the converted check reflects a "misallocation error" and "not an actual loss" falls flat. The NRA neglects to mention that Hammer intended to donate to the NRA Foundation only after the NRA's initial solicitation. Compl. ¶ 58. With that initial solicitation and subsequent misappropriation, Hammer sufficiently alleges harm. *Cf.* Fla. Stat. § 501.203(8)-(9) (defining "trade or commerce" to include solicitation, and "thing of value" to include "donation[s]").

Hammer's FDUTPA claim will survive as to her converted check.

## III.

The NRA's motion to dismiss (ECF No. 22) is GRANTED in part. Count Five of Hammer's Complaint is dismissed. The NRA's motion is otherwise DENIED. The NRA must file an answer within fourteen days.

SO ORDERED on January 9, 2026.

s/ *Allen Winsor*
Chief United States District Judge