**MARION P. HAMMER,**
**An individual and Florida resident**

     **Plaintiff,**

                              **CASE No. 4:25-cv-00219-AW-MAF**

**v.**

**NATIONAL RIFLE**
**ASSOCIATION OF AMERICA,**

     **Defendant.**

_____/

## DEFENDANT'S MOTION FOR SANCTIONS, INCLUDING DISMISSAL; FOR ATTORNEYS' FEES, COSTS, AND EXPENSES; OR, IN THE ALTERNATIVE, TO CONTINUE PLAINTIFF'S DEPOSITION UNDER PROTECTIVE CONDITIONS, TO EXTEND DISCOVERY AND DISPOSITIVE-MOTION DEADLINES, TO QUASH OR VACATE PLAINTIFF'S CORPORATE REPRESENTATIVE DEPOSITION NOTICE, AND INCORPORATED MEMORANDUM OF LAW

Defendant, NATIONAL RIFLE ASSOCIATION OF AMERICA ("Defendant"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 16, 26, 30, 37, and 41, and Local Rule 7.1, respectfully moves for sanctions based on Plaintiff's egregious deposition misconduct, including dismissal of this action with prejudice. Defendant also seeks recovery of its reasonable attorneys' fees, costs, and expenses caused by Plaintiff's misconduct, the interruption and suspension of Plaintiff's deposition, and this resulting Motion for Sanctions.

Alternatively, should the Court decline to dismiss this lawsuit with prejudice, Defendant requests an order granting leave to continue Plaintiff's deposition under protective conditions at the courthouse in the presence of the Magistrate Judge, extending the discovery deadline through the date necessary to coordinate and complete that supervised deposition, extending the dispositive-motion deadline to three weeks following the close of dicovery, vacating Plaintiff's currently noticed corporate representative deposition without prejudice to rescheduling, and granting such other and further relief as the Court deems just and proper.

## I. INTRODUCTION

This Motion for Sanctions arises from extraordinary and escalating misconduct by Plaintiff during her recent deposition, misconduct that began with repeated vulgar abuse of defense counsel and culminated in Plaintiff **assaulting** defense counsel Brian Hayden during the deposition. Plaintiff's conduct did not merely make the deposition contentious or difficult. It rendered the proceeding impossible to complete in a fair, orderly, and safe manner, prejudiced Defendant's ability to defend this case, wasted substantial time and expense, and struck at the integrity of the discovery process itself.

Just as importantly, Plaintiff's conduct demonstrated not only an inability to comply with the rules governing civil litigation and basic standards of civility, but

also an inability or unwillingness to conduct herself in accordance with the law more generally.

Plaintiff's deposition was taken on March 17, 2026. Present for Defendant were counsel Brian Hayden and Jeremy Schneider. Also present were Plaintiff, Plaintiff's counsel Richard Coates, the court reporter, and the videographer. From the outset of the deposition, Plaintiff directed vulgar and abusive remarks at Mr. Hayden, including calling him an "asshole" on numerous occasions. That conduct alone was improper and obstructive. But Plaintiff did not stop there.

As the deposition proceeded, Plaintiff escalated from continued verbal abuse to physical misconduct. Becoming increasingly aggressive, Plaintiff attempted to tip over Mr. Hayden's Yeti mug of hot coffee. Mr. Hayden prevented a spill by catching the mug and moving it out of Plaintiff's reach. Later in the deposition, Plaintiff escalated further and assaulted Mr. Hayden by taking the contents of her water cup and throwing the water at him. At that point, it was clear that Plaintiff's conduct was continuing to escalate and that the deposition could not safely or fairly continue. Mr. Hayden was forced to suspend the deposition and leave before completing his questioning.

This was not a mere personality conflict, heated exchange, or isolated moment of incivility. Plaintiff's conduct was deliberate, abusive, obstructive, and ultimately assaultive. It prevented Defendant from completing a key deposition in the case. It

also caused Defendant to incur unnecessary attorneys' fees, court reporter fees, videographer fees, travel expenses, and motion-related expenses, all because Plaintiff chose to derail the deposition rather than participate in it appropriately. Defendant should not be required to absorb those costs, nor should it be forced to proceed as though the discovery process had not been fundamentally disrupted by Plaintiff's shameful actions.

Furthermore, dismissal with prejudice is warranted. A litigant who responds to questioning by escalating from vulgar insults to physical aggression and assault during her own deposition has not simply frustrated a fair examination; she has demonstrated a willful refusal to participate in discovery within the bounds required by the Federal Rules, the Court's standards of civility, and the law itself. Plaintiff's conduct was not accidental, technical, or harmless. It was intentional conduct that resorted to physically attacking opposing counsel. That conduct reflects a disregard not only for this Court's authority and the orderly administration of discovery, but also for the most basic legal and behavioral norms required of any litigant who seeks to invoke the judicial process. Under these circumstances, dismissal with prejudice is an appropriate sanction.

In addition to dismissal, Defendant seeks an award of the reasonable fees, costs, and expenses caused by Plaintiff's misconduct, including the fees and expenses associated with preparing for and attending the aborted deposition, the

court reporter and videographer charges, travel expenses, the work required to address the deposition interruption, and the fees and costs incurred in bringing this Motion for Sanctions.

If the Court declines to dismiss the lawsuit with prejudice at this time, Defendant respectfully requests alternative relief necessary to restore a fair discovery process and eliminate the prejudice caused by Plaintiff's misconduct. Specifically, Defendant requests leave to continue Plaintiff's deposition under protective conditions, with the continued deposition to occur at the courthouse and in the presence of a Magistrate Judge. Defendant further requests that the Court extend the discovery deadline through the date necessary to coordinate and complete Plaintiff's supervised deposition, extend the dispositive-motion deadline to three weeks after the completion of that deposition, and quash or vacate Plaintiff's currently noticed corporate representative deposition so that it may be rescheduled after Defendant has had a fair opportunity to complete Plaintiff's own deposition.

In this instance, Plaintiff's misconduct transformed a duly noticed deposition into an abusive, physically confrontational, and assaultive proceeding that had to be halted before Defendant could complete its examination. The Court should not permit Plaintiff to benefit from her misconduct or require Defendant to proceed under deadlines and discovery obligations distorted by it. Defendant therefore asks the Court to impose the sanction of dismissal with prejudice, award Defendant its

fees, costs, and expenses, and grant such other relief as the Court deems just and proper.

In the alternative, if the Court declines to dismiss the case, Defendant asks the Court to enter the protective and scheduling relief necessary to allow discovery to proceed in a fair, orderly, and safe manner.

## II.     FACTUAL BACKGROUND

1.     The discovery deadline was March 17, 2026, and the current dispositive-motion deadline is April 16, 2026. [Dkt. No. 28].

2.     Defendant duly noticed Plaintiff's deposition for March 17, 2026. *See* Notice of Deposition attached hereto as **Exhibit A**.

3.     The deposition proceeded with defense counsel Brian Hayden and Jeremy Schneider, Plaintiff, Plaintiff's counsel Richard Coates, a court reporter, and a videographer present. *See* Declaration of Jeremy Schneider ("Schneider Decl.") at ¶ 4, attached hereto as **Exhibit B**.

4.     From the beginning of the deposition, Plaintiff engaged in hostile and abusive conduct toward Mr. Hayden, including calling him an "idiot", "stupid", and an "asshole" on numerous occasions.  *See* Marion Hammer Deposition Transcript, attached hereto as **Exhibit C** at [13:18, 23:14, 50:8, 64:3, 65:4, 65:7, 67:11, 72:8,

73:24, 81:13]; *see also* Composite Deposition Video, attached hereto as **Exhibit D**[1] at [Video 2 00:02:30- 00:02:40, Video 2 00:06:45-00:07:04, Video 5 00:18:10-00:18:20, Video 5 00:19:50-00:19:59, Video 5 00:20:00-00:20:10, Video 5 00:23:02-00:23:10, Video 5 00:29:02-00:29:12, Video 5 00:30:35-00:30:50, Video 6 00:00:50 - 00:00:55][2].

5.     Plaintiff's misconduct was not limited to occasional profanity or a few isolated outbursts. Throughout the deposition, Plaintiff engaged in a pattern of abusive and obstructive conduct that repeatedly disrupted the examination, frustrated defense counsel's ability to question her in an orderly manner, and hindered Defendant's ability to obtain a fair and complete deposition. That conduct included repeated profanity, insults, and personal attacks directed at defense counsel, as well as repeated refusals, or initial refusals, to answer questions concerning matters central to her claims and Defendant's defenses. Representative examples include the following:

- "Goddamn it." Ex. C, 13:15.

- "He's an asshole." Id. 13:18.

- "Who is this asshole?" Id. 17:4.

---

[1] Defendant respectfully cautions the Court that the recordings contain several abrupt and significant increases in volume caused by Plaintiff's shouting.
[2] Exhibit D is being delivered to the Court via mail and includes a physical flash drive containing six video recordings of the Plaintiff's deposition.

- "He represents a bunch of assholes." Id. 17:7-8.

- "Hell if I know." Id. 20:11.

- "I'm not sitting here for this bullshit." Id. 21:6-7.

- "Kiss my butt." Id. 21:14.

- "I don't know who the hell you are or who you think you are . . . you're just another BS-er." Id. 21:22-25.

- "Whoever wrote those damn questions doesn't know squat." Id. 22:19-20.

- "I'm not putting up with this bull crap any longer. He's an ass." Id. 23:13-14.

- "Mike Blaz prepared them. And he thinks he's a big damn deal." Id. 23:19-20.

- "Just shut the hell up." Id. 24:6.

- "Goddamn it." Id. 27:3.

- "I'm not answering your goddamn questions." Id. 37:5-6.

- "Are you stupid?" Id. 38:1.

- "Your questions are stupid." Id. 40:14.

- "You're an ass." Id. 50:8.

- "Goddamn it. You know what I mean." Id. 51:16.

- "So shut the hell up." Id. 52:14.

- "Is he stupid or what?" Id. 53:16.

- "I can do any goddamn thing I want to." Id. 53:20.

- "Is he stupid or what?" Id. 54:9.

- "I can answer any goddamn question." Id. 54:17.

- "Am I going to have to put up with this crap?" Id. 60:2-3.

- "You know, this guy is an ass." Id. 64:3.

- "I'm not sitting here and answering his stupid questions." Id. 64:14-15.

- "What more do you want? You're stupid." Id. 65:4.

- "Are you stupid or just an idiot?" Id. 65:7.

- "You're just an idiot." Id. 67:11.

- "Because I'm not stupid like you." Id. 72:8.

- "You're an asshole." Id. 73:24.

- "Your questions are stupid. And any judge who thinks that I have to answer your stupid questions is stupid too." Id. 75:22-24.

- "Look at the pile of crap he's got." Id. 76:12.

- "You're stupid." Id. 77:22.

- "You're stupid." Id. 77:25.

- "You are an asshole." Id. 80:13.

- "You think you're God. And I think you're an asshole." Id. 80:16-17.

- "He's a lying asshole." Id. 81:13.

- "Goddamn it." Ex. C, 13:15.

- "He's an asshole." Id. 13:18.

- "Who is this asshole?" Id. 17:4.

6. Plaintiff also repeatedly refused, or initially refused, to answer questions, including the following:

- When asked to allow defense counsel to finish his questions before answering, Plaintiff refused: "No." Ex. C, 9:1-3.

- When asked again to allow defense counsel to finish his questions, Plaintiff again refused: "No. Because it's obvious that you're stalling." Id. 9:16-18.

- When asked to identify the person to whom she had been married, Plaintiff refused: "I'm not answering your stupid questions." Id. 10:20-25.

- When asked again after the break to identify the person to whom she had been married, Plaintiff initially refused: "I told you I wasn't answering these questions." Id. 11:12-15.

- When asked to state her email address for the record, Plaintiff initially refused: "No. I will not." Id. 17:15-20.

- When asked to walk through the different positions she held with ILA over the years, Plaintiff refused: "No." and then "No." Id. 22:10-15.

- When asked to continue answering the background questions in her deposition, Plaintiff announced that she would not continue answering them generally: "I'm not going to continue. If you have any important questions,

ask them. But if you think I'm going to answer all those questions, you're out of your mind." Id. 23:16-19.

- When counsel began asking questions about the contracting documents marked as Exhibit 2, Plaintiff refused: "I'm not answering your goddamn questions." Id. 37:5-6.

- When asked questions about Exhibit 2 and the contracting agreements, Plaintiff refused: "I'm not answering that." Id. 38:17-20.

- When asked questions about the contract allegations in her Complaint, Plaintiff refused: "I'm not answering questions about the contract for you." Id. 38:21-24.

- When asked whether she would answer defense counsel's questions if the deposition continued, Plaintiff expressly refused: "No. I will not answer your questions." Id. 40:11-12.

- When asked whether she was refusing to continue with the deposition, Plaintiff expressly confirmed: "I'm refusing." Id. 41:4-5.

- When asked to turn back to paragraph 52 of her Verified Complaint, Plaintiff refused: "No." Id. 44:16-17.

- When counsel resumed asking questions about the contract allegations in her Complaint, Plaintiff again refused: "I'm not answering any questions about the contract." Id. 45:1-3.

- When told counsel was going to ask her contract questions, Plaintiff stated in advance that she would refuse to answer them: "You can ask. And I won't answer." Id. 45:4-7.

- When counsel attempted to direct her to the relevant pages of Exhibit 2, Plaintiff again refused to answer contract questions: "I will not answer your goddamn questions." Id. 45:21-23.

- When asked to look at the first pages of Exhibit 2 so questioning could proceed, Plaintiff refused even to review the exhibit: "I will not." Id. 45:24-46:2.

- When again asked to look at the first four pages of Exhibit 2, Plaintiff refused: "No." Id. 49:17-20.

- When asked what additional "great things" she had done for the NRA in connection with the Marion P. Hammer Woman of Distinction Award, Plaintiff refused: "No. I will not answer your question." Id. 60:2-7.

- When asked to identify a single person who joined the NRA because of Exhibit 3, Plaintiff refused to identify that person: "I won't tell you." Id. 69:10-15.

- When asked how Exhibit 4 had harmed her, Plaintiff refused to explain: "I won't tell you how I've been harmed." Id. 71:15-18.

- When counsel continued asking how Exhibit 4 had harmed her, Plaintiff confirmed she would not answer: "You can ask until hell freezes over. And I'm not going to answer you." Id. 71:19-22.

- When asked to identify a single person who donated money to the NRA because of Exhibit 4, Plaintiff initially refused to identify that person: "I won't tell you." Id. 73:1-4.

- When asked to clarify the second donor's surname, Plaintiff refused and announced she was leaving: "No. I will not answer the question. I'm going." Id. 73:21-24.

- When asked to identify a single person who joined the NRA because of Exhibit 4, Plaintiff initially refused: "I don't want to tell you." Id. 75:10-15.

- When asked the same question again, Plaintiff again refused: "I won't tell you." Id. 75:16-19.

- When asked yet again to identify who joined the NRA because of Exhibit 4, Plaintiff again refused: "I'm not telling you." Id. 76:2-5.

7. As the deposition continued, Plaintiff began to escalate her verbal onslaught to physical acts of intimidation when she attempted to tip over Mr. Hayden's Yeti mug containing hot coffee. *See* **Exhibit D** at [Video 2 00:16:10]; Schneider Decl. ¶ 10.

8. Mr. Hayden caught the mug to prevent it from spilling and moved it out of Plaintiff's reach. **Exhibit D** at [Video 2 00:16:10]; Schneider Decl. ¶ 11.

9. Finally, after being asked a question central to her case, and perhaps realizing she had given a damaging response, Plaintiff, out of apparent frustration, took the contents of her water cup and threw the water at Mr. Hayden, which was immediately followed by a tirade of verbal abuse. **Exhibit D** at [Video 5 00:37:35 - 00:39:06]; Schneider Decl. ¶ 12.

10. After Plaintiff physically escalated the encounter, the deposition could not safely or fairly continue. Schneider Decl. ¶ 9.

11. Mr. Hayden therefore suspended the deposition before completing his questioning and left the proceeding.

12. This is how the deposition ended:

MR. HAYDEN: So going back on the record. Just before we went on break, Ms. Hammer threw a glass of water at me. She's been rude the entire deposition -- yelling, screaming, yelling various profanities. She earlier tried to throw my coffee cup at me. So we're ending the deposition result of the latest actions; which I think amount to actual assault. So we're going to seek appropriate relief from the Court. We're ending the deposition for today. I don't think it can go on. And I don't trust that Ms. Hammer is going to behave or not attempt to throw anything else at me during the deposition. So we're ending it for today. Thank you.

14

THE WITNESS: He's a lying asshole.

MR. COATES: We're off the record.

THE VIDEOGRAPHER: The time now is 11:03 a.m. We're off the record.

*See* **Exhibit D** at [Video 6 00:00:10-00:01:02]

13.     Plaintiff's counsel Richard Coates attempted at times to deescalate his client's behavior, but she refused to heed his instructions. *See* Schneider Decl. ¶ 19.

14.     Defendant was unable to complete Plaintiff's deposition as a result of Plaintiff's misconduct.

15.     Defendant has incurred unnecessary fees and costs as a direct result of the aborted deposition, including videographer fees, court reporter fees, attorney's fees, travel expenses, and the fees and costs associated with this motion and the reconvened deposition.

16.     Plaintiff has served a notice for the deposition of Defendant's corporate representative. *See* Plaintiff's Notice of Taking Corporate Representative Deposition attached hereto as **Exhibit E**.

17.     Under these circumstances, Plaintiff's noticed corporate representative deposition should not proceed until Defendant has had a fair opportunity to complete Plaintiff's deposition in a controlled and safe setting.

### III. <u>MEMORANDUM OF LAW</u>

#### A. **Plaintiff's Conduct Warrants Dismissal as a Sanction**

Dismissal with prejudice is warranted because Plaintiff did not merely participate in a contentious or difficult deposition; she willfully obstructed the deposition, escalated the proceeding from verbal abuse to physical aggression, and assaulted Defense counsel Brian Hayden. Courts have exercised inherent authority to dismiss due to abusive conduct including implied threats of violence during a deposition, concluding lesser sanctions were inappropriate. *See* Mohammed v. Anderson, No. 18 C 8393, 2019 U.S. Dist. LEXIS 141773, at 14 (N.D. Ill. Aug. 21, 2019) (demonstrating that violent or threatening misconduct toward opposing counsel at a deposition can warrant dismissal). Here, the action was even more extreme than in *Mohammed*. It was not merely an implied threat, it was an offensive and actual physical attack directed at Mr. Hayden.

Furthermore, the Federal Rules authorize sanctions for precisely this kind of conduct. Rule 30(d)(2) provides that "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). In addition, Rule 41(b) authorizes dismissal where a plaintiff fails to prosecute or fails to comply with the Federal Rules or a court order. Fed. R. Civ. P. 41(b).

Plaintiff's conduct falls squarely within this authority. According to the transcript, video record, and supporting declarations, Plaintiff repeatedly refused to answer questions and directed vulgar insults at defense counsel Brian Hayden during the deposition, including calling him an "idiot", "stupid", and an "asshole." **Exhibit C** at [13:18, 23:14, 50:8, 64:3, 65:4, 65:7, 67:11, 72:8, 73:24, 81:13] **, Exhibit D** at [Video 2 00:02:30- 00:02:40, Video 2 00:06:45-00:07:04, Video 5 00:18:10-00:18:20, Video 5 00:19:50-00:19:59, Video 5 00:20:00-00:20:10, Video 5 00:23:02-00:23:10, Video 5 00:29:02-00:29:12, Video 5 00:30:35-00:30:50, Video 6 00:00:50 - 00:00:55]; Schneider Decl. ¶ 6.

Plaintiff's misconduct then escalated beyond mere verbal abuse. Plaintiff attempted to tip over Mr. Hayden's Yeti mug full of hot coffee and, later in the deposition, threw the contents of her water cup at him. **Exhibit D** at [Video 2 00:16:10 and Video 5 00:37:35 - 00:39:06]; Schneider Decl. ¶ 10. That conduct was not merely rude, uncooperative, and evasive. It was also deliberate, escalating, and physically aggressive conduct that brought the deposition to a necessary halt.

This is exactly the kind of behavior that "impedes, delays, or frustrates the fair examination of the deponent" within the meaning of Rule 30(d)(2). Fed. R. Civ. P. 30(d)(2). Plaintiff's actions prevented Defendant from completing a key deposition in the lawsuit. The examination ended prematurely not because Defendant lacked diligence, but because Plaintiff made continuation of the deposition unsafe and

untenable. The Rules expressly recognize that a deposition may be suspended so that a party may seek relief from the Court when the examination has become abusive or unmanageable. Fed. R. Civ. P. 30(d)(3)(A). That is what occurred here.

Dismissal with prejudice is an appropriate sanction under these circumstances because Plaintiff's misconduct was willful, serious, and directly prejudicial to Defendant. *See Mohammed*, 2019 U.S. Dist. LEXIS 141773, at 14. This was not a technical discovery violation, a single improper answer, or an emotional outburst that quickly subsided. Plaintiff repeatedly – and without provocation – abused opposing counsel, then physically attacked him by throwing water at him during the deposition.

In doing so, Plaintiff demonstrated that she would not conduct herself in accordance with the Federal Rules governing discovery, the standards of civility expected in federal court, or the law more generally. A party who assaults opposing counsel during her own deposition has moved far beyond ordinary discovery misconduct. She has shown a disregard for the judicial process itself.

The severity of Plaintiff's conduct also distinguishes this matter from cases involving lesser discovery disputes that can be cured by an admonition, a reconvened deposition, or a modest monetary sanction alone. Plaintiff's conduct did not simply delay the deposition; she assaulted Defendant's counsel. Lesser sanctions may reimburse some of those costs, but they do not fully address the seriousness of

Plaintiff's misconduct or the damage it did to the orderly administration of discovery.

Dismissal with prejudice is therefore warranted as the primary sanction. Plaintiff chose to turn a duly noticed federal deposition into an abusive and assaultive proceeding. A litigant cannot invoke the machinery of the federal courts, refuse to comport herself within the bounds of lawful and orderly process, physically attack opposing counsel during discovery, and then continue litigating as though the event were merely an unfortunate discovery disagreement. Rule 30 authorizes sanctions for conduct that frustrates a fair deposition, and Rule 41 permits dismissal where a plaintiff fails to comply with the Federal Rules. Fed. R. Civ. P. 30(d)(2); Fed. R. Civ. P. 41(b).

Quite understandably, defense counsel no longer believes discovery in this case can proceed safely under ordinary conditions. Plaintiff's conduct has demonstrated that she is not only verbally abusive, but also willing to escalate to physical aggression. Under these extraordinary circumstances, dismissal with prejudice is appropriate.

### B. Defendant Is Entitled to Recover Its Fees, Costs, and Expenses Caused by Plaintiff's Deposition Misconduct.

Even apart from dismissal, Plaintiff's conduct warrants substantial monetary sanctions. The Federal Rules expressly authorize the Court to impose "an appropriate sanction—including the reasonable expenses and attorney's fees

19

incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." *See* Fed. R. Civ. P. 30(d)(2); *see also Devaney v. Continental American Insurance Co.*, 989 F.2d 1154 (11th Cir. 1993). In addition, where motion practice becomes necessary as a result of discovery misconduct, the Rules permit the Court to require payment of the movant's reasonable expenses, including attorney's fees. *See* Fed. R. Civ. P. 37(a)(5). These provisions apply squarely here.

Those recoverable amounts include, at a minimum, the reasonable attorneys' fees associated with preparing for Plaintiff's deposition, attending the deposition, addressing the interruption and suspension of the deposition, and preparing the present Motion for Sanctions. They also include the court reporter's fees, videographer's fees, travel expenses, and any additional costs associated with having to reconvene and complete Plaintiff's deposition in a controlled setting.

An award of these amounts is necessary for at least two reasons. First, Defendant should not be required to bear the financial consequences of misconduct that Plaintiff herself caused. Defendant properly noticed and appeared for Plaintiff's deposition and was prepared to complete it. The deposition was not cut short because of any lack of diligence by Defendant; it was cut short because Plaintiff chose to engage in escalating verbal abuse and physical misconduct. The resulting costs were therefore caused directly by Plaintiff's own actions.

20

Second, a fee and cost award is necessary to vindicate the integrity of the discovery process. A party cannot be permitted to derail her own deposition through abusive and assaultive conduct, force the opposing party to incur the expense of an incomplete deposition and resulting motion practice, and then leave the opposing party to absorb those losses. Rule 30(d)(2) exists precisely to address conduct that impedes or frustrates a fair deposition, and this case presents an unusually strong basis for its application.

Defendant therefore requests that the Court award Defendant all reasonable fees, costs, and expenses caused by Plaintiff's deposition misconduct, including but not limited to: (1) attorneys' fees associated with preparing for and attending the aborted deposition; (2) attorneys' fees associated with addressing the interruption and suspension of the deposition and seeking Court intervention; (3) the court reporter's fees; (4) the videographer's fees; (5) travel expenses; and (6) the reasonable fees, costs, and expenses associated with reconvening and completing Plaintiff's deposition if the Court permits the case to proceed.

**C. If the Court Declines to Dismiss the Action, It Should Set an In-Person Hearing and Grant Alternative Relief Necessary to Restore a Fair Discovery Process**

If the Court declines to dismiss the action based on the present record, Defendant respectfully requests that the Court set this matter for an in-person hearing so that Defendant may be heard on the appropriate alternative relief necessitated by

21

Plaintiff's misconduct. Given the seriousness of the conduct at issue—including Plaintiff's verbal abuse, escalating physical misconduct, and assault on opposing counsel during the deposition—an in-person hearing would assist the Court in evaluating the nature and severity of the misconduct, Plaintiff's mental fitness to proceed with litigation, the prejudice to Defendant, and the protective and scheduling measures necessary if the case is to proceed. Because motions in this District may be resolved without a hearing, Defendant respectfully requests oral argument and an in-person hearing on these issues if the Court is not inclined to grant dismissal on the written submissions.

In the event this matter is not dismissed, Defendant would respectively request that the Court: (1) grant Defendant leave to continue Plaintiff's deposition; (2) require that the deposition occur at the courthouse in the presence of the Magistrate Judge, or under such other Court-imposed protective conditions as the Court deems appropriate; (3) extend the discovery deadline through the date necessary to coordinate and complete Plaintiff's supervised deposition; (4) extend the dispositive-motion deadline to three weeks after completion of Plaintiff's deposition; and (5) quash or vacate Plaintiff's currently noticed corporate representative deposition, without prejudice to rescheduling after Defendant has had a fair opportunity to complete Plaintiff's deposition. These forms of relief are authorized by Rules 16, 26, and 30 and are amply justified by the record here.

### 1. The Court should grant Defendant leave to continue Plaintiff's deposition.

Because Plaintiff has already been deposed once in this action, Defendant requires leave of court to continue or retake her deposition. Rule 30 expressly requires leave where "the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii). The Rules further provide that "[t]he court must allow additional time" for a deposition if needed "to fairly examine the deponent" or where "the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1). Plaintiff's conduct here plainly impeded, delayed, and ultimately terminated the examination before Defendant could complete its questioning. Defendant is therefore entitled, at a minimum, to leave to continue Plaintiff's deposition for the time reasonably necessary to complete a fair examination.

### 2. The Court should require that Plaintiff's continued deposition occur at the courthouse in the presence of the Magistrate Judge, or under other protective conditions the Court deems appropriate

Protective conditions are also warranted. Rule 26(c)(1) authorizes the Court, for good cause, to issue an order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense, and Rule 26(c)(1)(B) specifically permits the Court to specify the terms, including the time and place, of discovery. Plaintiff has already shown that, in an ordinary deposition setting, she

will not confine herself to testimony and objections, but will instead engage in repeated verbal abuse, escalating hostility, and physical misconduct. Under these circumstances, requiring that the deposition proceed at the courthouse and in the presence of the Magistrate Judge is an appropriate and measured means of ensuring that the deposition can be completed safely and orderly. If the Court declines to require the Magistrate Judge's presence, Defendant alternatively requests such other protective terms as the Court deems appropriate, including any location, supervision, or procedures necessary to prevent further misconduct.

### 3. The Court should extend the discovery deadline through the date necessary to coordinate and complete Plaintiff's supervised deposition.

The current discovery schedule cannot fairly remain in place after Plaintiff's own misconduct prevented completion of her deposition. Rule 16(b)(4) provides that a scheduling order may be modified for good cause and with the judge's consent. Good cause plainly exists here. Defendant acted diligently in noticing and taking Plaintiff's deposition, and the reason discovery could not be completed under the current schedule was Plaintiff's own behavior, not any lack of diligence by Defendant. If the Court declines dismissal and permits the case to proceed, discovery should be extended through the date necessary to coordinate and complete Plaintiff's supervised deposition under the Court's order. That relief is necessary to restore the

discovery that Plaintiff's misconduct interrupted and to ensure that Defendant is not prejudiced by deadlines made unworkable through no fault of its own.

**4. The Court should extend the dispositive-motion deadline to three weeks after completion of Plaintiff's deposition.**

For the same reasons, the dispositive-motion deadline should be extended to three weeks after Plaintiff's supervised deposition is completed. Defendant should not be required to prepare dispositive motions without the benefit of a completed deposition that Plaintiff herself prevented Defendant from obtaining. Because Plaintiff's deposition is central to the factual record in this case, a dispositive-motion deadline tied to the completion of that deposition is the most sensible and equitable way to eliminate the prejudice Plaintiff caused and permit orderly motion practice. Rule 16(b)(4) authorizes that modification for good cause, which is present here.

**5. The Court should quash or vacate Plaintiff's currently noticed corporate representative deposition, without prejudice to rescheduling it after Defendant has had a fair opportunity to complete Plaintiff's deposition.**

The Court should also relieve Defendant from having to proceed with Plaintiff's currently noticed corporate representative deposition before Defendant has had a fair opportunity to complete Plaintiff's own examination. Rule 26(c)(1)(B) permits the Court to specify the terms, time, and place of discovery, and courts have broad authority under Rule 16 to manage the sequence and timing of discovery to avoid prejudice and undue burden. Under the circumstances presented here, it would

be inequitable to require Defendant to proceed with a corporate representative deposition while Plaintiff's own deposition remains incomplete solely because of Plaintiff's misconduct. The more orderly and fair course is to quash or vacate the presently noticed corporate representative deposition, without prejudice to Plaintiff's ability to renotice it after Defendant has completed Plaintiff's deposition under the Court's supervision or other protective conditions ordered by the Court.

**6.    This alternative relief is the minimum necessary if the case is not dismissed.**

If the Court declines to impose the ultimate sanction of dismissal with prejudice, the foregoing relief is the minimum necessary to restore a workable discovery process and mitigate the prejudice Plaintiff caused. Plaintiff's deposition cannot simply be reset under ordinary conditions as though nothing occurred. Nor should Defendant be required to proceed under the current schedule or with Plaintiff's pending corporate representative deposition notice while deprived of a fair opportunity to complete Plaintiff's own deposition.

**<u>REQUEST FOR RELIEF</u>**

For these reasons, Defendant respectfully requests that the Court enter an order:

1.    Dismissing this action as a sanction for Plaintiff's assault on Defense counsel Brian Hayden;

2.    Awarding Defendant its reasonable attorneys' fees, costs, and expenses caused by Plaintiffs misconduct, including but not limited to the fees and expenses

26

associated with preparing for and attending the interrupted deposition, the court reporter's fees, videographer's fees, travel expenses, the work required to address the halted deposition, the preparation of this Motion, and any costs associated with reconvening Plaintiff's deposition if necessary; or

3.  In the alternative, if the Court declines to dismiss the action:

   a.  scheduling an in-person hearing for the Court to evaluate the nature and severity of the misconduct, Plaintiff's mental fitness to proceed with litigation, the prejudice to Defendant, and the protective and scheduling measures necessary for this case to proceed;

   b.  granting Defendant leave to continue and retake Plaintiff's deposition;

   c.  ordering that the continued deposition occur at the courthouse in the presence of the Magistrate Judge, or under such other protective conditions as the Court deems appropriate;

   d.  extending the discovery deadline through the date necessary to coordinate and complete Plaintiff's supervised deposition;

   e.  extending the dispositive-motion deadline to three weeks after the completion of Plaintiff's deposition; and

f.  quashing or vacating Plaintiff's currently noticed corporate representative deposition, without prejudice to rescheduling after Defendant has had a fair opportunity to complete Plaintiff's deposition; and

4.  granting Defendant such other, further, additional, and different relief as the Court deems just, appropriate, equitable, and proper under the circumstances.

<u>**CERTIFICATE OF WORD COUNT**</u>

The undersigned, relying upon the word count of Microsoft Word, hereby certifies that this Motion and Memorandum has a total of 5440 words.

## <u>CERTIFICATE OF CONFERAL</u>

Pursuant to Local Rule 7.1, Defendant certifies that counsel for Defendant conferred in good faith with Plaintiff's counsel, Richard Coates, by telephone on March 18, 2026, regarding the relief requested in this Motion. Plaintiff opposes the relief requested herein.

Dated: March 23rd, 2026.

Respectfully submitted,

JACKSON LEWIS, P.C.
501 Riverside Avenue, Suite 902
Jacksonville, Florida 32202
Telephone:  (904) 638-2655
Facsimile:  (904) 638-2656

By: */s/ Robert H. Schmidlin*
Brian L. Hayden
Florida Bar No. 58987
Brian.Hayden@jacksonlewis.com
Robert H. Schmidlin
Florida Bar No. 1049839
Robert.Schmidlin@jacksonlewis.com
Megan.Pina@jacksonlewis.com
JacksonvilleDocketing@jacksonlewis.com
*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of March 2026, a true and correct copy

of the foregoing has been filed via CM/ECF and served via electronic mail to the

following counsel of record:

Richard E. Coates, Esq.
Fla. Bar No. 0930032
115 East Park Avenue, Unit 1
Tallahassee, Florida 32301
rcoates@rcoateslaw.com
sgreen@rcoateslaw.com
Coates Law Firm, PL

*Attorney for Plaintiff*

<u>*/s/ Robert H. Schmidlin*</u>
Attorney